The next matter, number 23-1727, Joyce Toth v. Everly Well, Incorporated, et al. At this time, would counsel for the appellant please introduce herself on the record to begin. May it please the Court. Excuse me. Stephanie Ostrowski for Ms. Toth. May I reserve four minutes for rebuttal? You may. After Ms. Toth spent over $100 on Everly Well's food sensitivity test, Everly Well refused to actually perform that test unless she checked a box on its website. So Ms. Toth checked that box. But Everly Well's effort to transform that checkbox into a valid arbitration clause runs afoul of a host of basic contract law doctrines, from notice to assent to consideration to unconscionability. Everly Well asks this Court to set aside those traditional contract law doctrines in favor of a controversial money-now-terms-later theory of contract formation. But even if Massachusetts would adopt that type of theory, any conceivable version of a money-now-terms-later theory requires that a consumer have a right to reject the post-purchase terms by returning the product and reasonable notice of that right. Everly Well hasn't demonstrated that Ms. Toth had either here. If this Court has any doubt that the Massachusetts Supreme Judicial Court would conclude that a contract was not formed under these circumstances, it should certify that question to the Massachusetts Supreme Judicial Court. I'd like to turn first to that right of return that Ms. Toth lacked. Can I just understand something? Who is this contract with? Who are you having the contract with? To be fair, Your Honor, I think it's a... I just am confused. You bought it from CVS? Yes, Your Honor. Yes, I think it's a tricky question whether at the point of sale a contract was formed. Well, it certainly wasn't formed with Everly Well. Fair, Your Honor, but that doesn't mean... So you're not suing CVS or Target? Correct, Your Honor. So you're suing Everly Well? Correct. So when was there, wouldn't the agreement with Everly Well, isn't it just possible the agreement with Everly Well is when you each agreed to arbitrate? And then there's just a question, was there an agreement to arbitrate? You promised you would arbitrate any disputes. They promised they would arbitrate any disputes. We just look at, did you each make those promises to one another? If you did, we enforce it. If you didn't, there's no contract on that. So... What's this all about now, terms later, this, that? You're not... You didn't buy it from Everly Well. I hear your point, Your Honor, but under Massachusetts law, a company cannot condition the performance of a legal duty that it already owes on a consumer agreeing to some contract terms. It makes no difference whether there might be... I'm not understanding. Suppose you got it as a birthday present. Somebody handed you the kit. What would happen then? You have the kit. Somebody said, oh, you're going to love this. You already complained about allergies. Here's the kit. Now you have the kit. Yes, I... And you take the kit and then, oh, I guess I'm supposed to go onto this site and then I can do a test. I go onto the site. Imagine it's much better than the site from your perspective. And the first thing that happens is before you go on this site, you have to agree that any dispute that arises over how we conduct the test, you will arbitrate. And you say, that sounds fair. And plus, you have to arbitrate also. So you each sign and you shake hands. Wonderful dealing business with Everly Well. Is there any problem? Here's why this case is different, Your Honor, and that's because Ms. Toth paid $120 for this food sensitivity test and Everly Well... To whom? To Target, Your Honor. But what... So why is it any... You're not suing Target. That's what I just don't understand. What is the problem? Yes, Your Honor, but what Everly Well represented to customers on the front of its box is that you can buy this product and we will give you a food sensitivity test where you learn your reactivity... And you didn't buy it from them. Yes, but Ms. Toth paid $120. She's somebody else. Yes, Your Honor, but a company cannot... Under Massachusetts law, a manufacturer owes a duty to provide what it represents to consumers that it's selling them. Ms. Toth paid good money to receive this food sensitivity test. And then Everly Well turns around and says, well, actually, that doesn't count. Is this case any different from the birthday present case? Yes, I think so, Your Honor, because Everly Well represented to consumers that they could pay $120, receive this test, and then... Did Everly Well represent that? Yes, that is the front of its package, Your Honor. But you bought it off the Target website and paid the money to Target. Yes, Your Honor, but... The website would be in the birthday present case. It's also there. Correct, but in the birthday present case, the recipient of the birthday present didn't pay that money for the test. To whom? To Everly Well. They paid it to... Suppose it wasn't that. It's not a birthday gift. I give it to you, but I say, you know what, I'd like you to pay me $100 for it. Discount. Same case, right? Under Massachusetts law, Your Honor, that lack of privity doesn't mean that a manufacturer doesn't owe duties to provide what it represented that it would provide. I mean, this is, you look at cases like Jacobs v. Yamaha Motor Company, cited in our brief, a representation that a manufacturer makes that they are going to provide some service. Yes, and you're suing them for breaching that. Yes, Your Honor. And you made an agreement they contend to arbitrate that. What does it have to do with anything that you bought it from Target? Ms. Toth paid good money for this product, Your Honor. Relying on Everly Well's representation that by paying this money, she would be entitled... So maybe she can get a refund from Target. She cannot get a refund from Target. But you've got to sue them first to get it. You can't get the refund from Target by suing Everly Well.  ...to represent that it will provide some service, and then after a consumer pays for that service, add additional contract terms where a consumer would have reasonable notice that they could get their money back. What happened here just isn't fair, because Ms. Toth paid $120 for this test. It was only after paying that money that Everly Well ever told her that it was going to condition its performance on additional terms. And at that point, it was too late. And that's because Ms. Toth couldn't return this test to Target, and she couldn't return the test to Everly Well. So perhaps if Everly Well had provided a way for her to get her money back from them, this would be a different situation. But Ms. Toth had no way to get her money back. She paid this money, and under the plain language of Target's return policy, she then was out of luck. When she was confronted with Everly Well's checkbox, Ms. Toth faced two choices. She could check that box, or she could be out $120 with nothing to show for it. That's not a manifestation of assent, and that's why no contract was formed here, Your Honor. That's just a manifestation that Ms. Toth had no choice. And the reason why she had no choice, Your Honor, is because she couldn't have returned this to Target. Target's return policy says most unopened items will receive a refund or exchange but would not have allowed the return of an opened item. And at the very least, she had no reasonable notice of that right. This is the ALI's restatement of consumer contracts deals with precisely this type of situation. So is it the same case if you bought it from, I buy it from Target, and I sell it to you for $50? Do you have the same case? Yes, I think so, Your Honor, but I do recognize that that would be a harder case because it's a... Kind of tough on Everly Well. I don't think so at all, Your Honor. If Everly Well is going to represent that it is selling this food sensitivity test to consumers, it needs to provide those... It needs to provide that test to those consumers. It can't represent on the front of its box that what consumers are purchasing is a food sensitivity test and then turn around and condition that on future terms. And that's what Everly Well is trying to do here. Even when it never gets the profit from the sale? It's not getting a dime from our $50 transaction. Your Honor, Everly Well isn't giving these away for free. But in our $50 transaction, it's not getting a penny of that. And the only money you paid was to me. I got the $50. Somebody in that situation can have some issue with Everly Well, but that's not the situation that we have here because Ms. Toth did purchase this from Target in reliance on Everly Well representing that she could pay $120 for this food sensitivity test. But if I may, Your Honor, setting aside this issue, the arbitration agreement is also illusory. And that's because Everly Well retained the right to unilaterally modify that arbitration agreement. This case is very similar to National Federation of the Blind, in which the court held that an arbitration agreement in which a company retained the right to unilaterally modify that agreement is unenforceable because it's illusory. And so if you look at JA-105, that's where the terms give Everly Well the right to unilaterally modify its arbitration clause, and all of those changes are effective immediately under that clause. So under the clause, if Everly Well wanted to sue a consumer in court tomorrow, it could change its terms today. That renders this agreement to the extent any agreement was formed at all illusory as this court held in National Federation of the Blind. And was that argument made below? Yes, Your Honor. So we did raise the illusory point below, but the second thing I'll add is that this illusory point is really responsive to the new argument that Everly Well makes on appeal, that its agreement to arbitrate was consideration for the promise. So below, the only consideration that it asserted was the test and its results. That consideration doesn't count because Everly Well already owed those duties at the time of purchase because that's what it represented to consumers. It would provide them. It's only on appeal that Everly Well argued for the first time that its promise to arbitrate was consideration for the arbitration clause. But you anticipated and nonetheless made the illusory argument below? Or you didn't make it, and now you're saying you have a good excuse for not making it? We did raise it below. We also raised in our opening brief, if you can't fault us as forfeiting an argument that we raised earlier, then we had to, Your Honor. But, yes. If there are no further questions, I'll remain the rest of my time for rebuttal. Thank you, Your Honor. Thank you. At this time, the counsel for the appellees, please introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court, I'm Katherine Peasley on behalf of Defendants Appellees Everly Well and Everly Health. My friend just focused quite a bit on the representations that appear on Everly Well's box, but she didn't mention the representation that's on the back of the box. On the back of the box, under the heading, Warnings and Limitations, this is at JA61. It says, Purchase, registration, and use are subject to agreeing to the Everly Well user agreement, which can be read at everlywell.com backslash terms. So this idea that Everly Well is selling a product and representing that it will provide a test kit without ever telling consumers there will also be terms associated with that is simply false. It's also on the box. Putting that aside, Massachusetts law requires notice, assent, and consideration for a binding agreement, and all three of those are present here. And that's all that this court needs to reach in order to affirm the district court's order because the rest of Ms. Toss' arguments are validity defenses and therefore the arbitrator. So I'm going to start with assent. That one's straightforward. There's a click box. Ms. Toss clicked the click box. That is an unequivocal manifestation of assent under Massachusetts Supreme Judicial Court's decisions in both Couders and in Archer. Her arguments that this assent was not meaningful somehow because she claims that she could not get a refund, those are validity defenses, and this court need not reach them. They also misread the target return policy. She's represented that it forbids her returning the product. That's simply not true. It doesn't. And actually, the district court made a factual finding on this point, that addendum 2. So from your perspective, what is the significance of the fact that they're suing Everly Well and they bought it from Target? Well, it's exactly what Your Honor pointed out, which is that the contract with Everly Well can't possibly have been concluded at the point of sale for exactly the reason you pointed out. A person can buy this product and give it to someone else. That's why there's a separate registration process. And at that point, the user gets notice of the agreement. There's consideration, which is the mutual promises to arbitrate. And they also give their assent by clicking the click box. And is there, in addition to the, is that the only ground for consideration that you're identifying as the mutual promises to arbitrate? No, Your Honor. Excuse me. You absolutely can take into consideration, as consideration, the consideration provided for the sale. If you want to get into that in Massachusetts. Take what you just said, which is we put the Target sale aside. That's not what the contract is. It's between Everly Well and the person going on the site to use the test kit and get the results. And in that agreement, is the only consideration the mutual promises of arbitration or is there some other consideration that's being identified, such as the user promises to arbitrate, the company promises to take the results and do stuff with them? Absolutely. The company sets forth in the agreement what they will do with test results when received and also the rights of the user to use the website. So those are rights the user is getting in exchange for the company providing the website and providing the test results in response to the kit. And what are you getting in return for that if it's not the money? Because we're not dealing with the person having bought it. What are you providing? What are you getting out of doing that that would be consideration to you? Primarily the agreement from Ms. Toss to arbitrate. That is what we've identified in our papers. And Massachusetts law is clear that that is sufficient consideration to support every action. So one version of the agreement between you and the other party is they made a binding promise to arbitrate. You agreed to then let them use the site, give them the results back in the terms that you said you would. And that's the agreement that locks them into arbitration. If that were true, what's the significance of the fact that you've given yourself the unilateral right to change the terms of arbitration? Or is that not true? We haven't, Your Honor, and I was going to get to that. So the citation in the record that my colleague cited to JA-105, that appears in a subordinate document, the terms of use. That clause does not allow Everly Well to modify the user agreement, which is a separate document, which is where the arbitration provision is contained. And that's the document that a user would go to when they click the link on the website. It's also clearly severable because it's an entirely separate document that is subordinate to the user agreement. Two of the three clauses that Ms. Toss' counsel has cited on appeal are in separate documents like that. They're subordinate to the user agreement. They can't modify the user agreement. And they were severable even if they could. The only clause that Ms. Toss has cited on appeal that is actually contained within the user agreement is not a modification clause at all. It's under the heading notice. And it says we reserve the right to provide notice to you at your email address, including notice of changes. But that on its face doesn't reserve the right to change the agreement itself. In order to do that, Everly Well would still need a cent in order for it to be valid. To read it otherwise would be going out of your way to read this contract as illusory, and that's the opposite of what the court does. And that's at JA-79. So we absolutely disagree that we reserve the right to unilaterally change this contract. And we also disagree that this was properly raised before the district court. But even if it were, it's meritless. So going back to the elements of contract formation, notice, assent, consideration. We've already touched on consideration. We've already touched on assent. Notice. Ms. Toss clearly had notice of this agreement. There's a checkbox that she couldn't scroll past. She had to check it in order to move on. It's next to the words I have read and accept the terms and conditions. Terms and conditions is clearly hyperlinked. Under counters, the checkbox serves multiple functions, one of which is to put a user on notice that they are entering into a contractual agreement. And lest there's any doubt as to whether or not this interface provides a user with appropriate notice, Judge Stearns in Wickburg v. Lift, he found that there was proper notice on almost exactly the same interface. And there's even a picture of that in his decision. Why do you care about another Judge Stearns' opinion? The reason is because the Massachusetts Supreme Judicial Court has favorably cited that decision twice, in counters and in Archer, in support of its notice discussion. In Archer, it cited it in support of the proposition that a user need not actually view an agreement so long as they have the opportunity to do so. So with that, you have all three elements of contract formation, and the rest of Ms. Toss' arguments are for the arbitrator. She's argued that we needed to cross-appeal in order to argue that validity is for the arbitrator, but we disagree. Under Jennings v. Stevens, it's clear that you don't appeal a district court's reasoning. You appeal its judgment. In this case, the judgment by the district court is that any remaining disputes should go to the arbitrator. There is nothing for us to appeal there. And because of both the delegation clause, which is the incorporation of the AAA's rules, and also because her arguments go to the entirety of the contract, for both of those reasons, the rest of her arguments need not be addressed. That said... Just so I'm following, the validity arguments go to the arbitrator because of the delegation clause? The delegation clause, yes, the incorporation of the AAA's rules, that's clear and unmistakable intent to delegate validity arguments to the arbitrator under this court's holding in Bosset. Okay. She argues that we've waived this argument. This court can, of course, affirm on any basis. We also disagree that it's waived. We pointed to this delegation clause before the district court. There is also the fact that her arguments go to the entirety of the contract rather than specifically to the arbitration provision. In response to that, she cited a Fourth Circuit case, Gibbs, but Gibbs simply reads the Supreme Court's precedent in RentaCenter differently than this court has in both Biller and in Farnsworth, which make clear simply saying this arbitration provision is invalid for the same reasons the entire contract is is not sufficient in order to specifically direct a challenge to the arbitration provision. The court need not get any further, but in the event that it does, her unconscionability arguments I want to touch on just a little bit. Her substantive unconscionability argument really hinges on this notion that under this contract the consumer always loses. That is not true. She makes that argument primarily based on a damages limitation provision, and there's three points on that. The first is that it was never raised to the district court, so it's waived. The second is that it's located outside the dispute resolution provision, so it's clearly severable. But maybe most importantly, it doesn't apply here. On its face, the damages limitation provision does not apply to all claims, and it tells consumers this provision may not apply in your jurisdiction if there are other rules in place. And that is at J78, just so that you have that citation. This is exactly one of those cases. Ms. Toth has brought a claim under Massachusetts General Law, Chapter 93A, and in Christian, this court recognized the consumer can't waive their right to damages under that statute. So this clause on its face doesn't even apply to her claim. And under this court's decision in Bacal in these circumstances, the court has to credit Everly Wells Representations during litigation, which we made to the district court, that Ms. Toth is not going to pay more than the arbitration fee, which is $200. That's less than half of the district court's filing fee. So it's absolutely not the case that consumers are always going to lose or that Ms. Toth's costs necessarily exceed her potential damages. So for all of these reasons, we think that the court should affirm the district court. I'm happy to answer any further questions that the panel has. Thank you. When a customer registers, is there any disclosure made to the customer about other uses to which the information they are providing may be put other than simply giving them a report back? For example, are they giving up any privacy rights that are disclosed? Are they giving up any rights to or are they giving the right to use their data for product improvement? Anything like that disclosed at the registration point? Yes, Your Honor. So at the registration point, in the very first paragraph of the user agreement, it also links to a privacy statement, which the user can go to to see exactly how Everly Well does and does not use their information. I know Ms. Toth has made claims in her complaint that Everly sells her information, and that's absolutely not true. It's also not relevant. What do they say that they use it for? I would have to refer specifically to the statement. Have you made an argument that any of those things that the customer is giving over constitute consideration? We haven't made that argument on appeal. We've primarily looked at the mutual promise to arbitrate. Did you make it below? We did not argue below that those constitute a consideration, Your Honor. And the reason that we focused on the mutual promises to arbitrate on appeal, in addition to the consideration supporting the sale, is because, as I said, Massachusetts law and this Court's precedent are clear that those mutual promises are valid and sufficient consideration to support an arbitration agreement. How can the consideration supporting the sale be consideration to you? Well, Your Honor, it would depend on how this Court chose to approach this contract. Well, you tell me. If this Court bought the argument that this contract was potentially concluded at the point of sale... Could it be? Sure. In that situation... Is there a way in which it could be? Well, we don't think so, Your Honor. Is there any authority that it could be? Well, it's certainly true that Massachusetts does recognize these so-called money-now, terms-later contracts. Are those cases where it's bought from one party and the other party is being sued? I'm not aware of one of those, Your Honor. Is there any such case ever? Not that I'm aware of, Your Honor. Why couldn't Target just be considered an agent of Everly Well for purposes of forming a contract between the customer and Everly Well? Well, to my knowledge, Your Honor, Everly Well doesn't control the representations, and, in fact, Everly Well doesn't control representations that Target is making to consumers on its website, so it doesn't have full control over that process. Aren't all of these representations also on the box? Are they just on the website, Target's website? I'm sorry, which one? Registration required. So that appears on the box. Okay. So it has nothing to do with controlling what Target's saying?  No, but... Oh. That doesn't explain why Target wouldn't be considered an agent. Sure. Well, for instance, Your Honor, Ms. Toth has disputed whether or not that picture of the back of the box was visible on Target's website at the point when she made the sale. There are two competing images of Target's webpage in the record. One shows it and one doesn't. So that's why that came to mind, is the idea that Everly Well doesn't control what Target's representing. And a customer, I take it, cannot register through the Target website? That's correct, Your Honor. They have to register the test through Everly Well's website. And can you buy directly from Everly Well? You can. Yes, Your Honor. And this argument about it being an agent, I take it, was not made below? No, it was not, Your Honor. What was the theory? Was there a theory propounded as to what the significance of Target is in this case? I'm just trying to understand the theory by which there's somehow a contract involving Target that relates to Everly Well. Was there anything argued about that? It was just asserted, basically. It was just asserted, Your Honor. Okay, thanks. And with that, we'd ask that this Court affirm the District Court. Thank you very much. Thank you, at this time, Counsel for the Appellant. Please reintroduce yourself on the record. You have a four-minute rebuttal. Thank you, Stephanie Ostrowski from Ms. Topp. Just a few brief points. I just want to be clear. It doesn't matter whether there was a contract with Target or Everly Well at the point of sale. The relevant question is whether Everly Well owed this duty to a customer that purchased the test that they represented that they were selling. And under Massachusetts law, if Everly Well refused to provide what it said it was selling, a consumer would be able to sue Everly Well and say, you said you would give me this test and you didn't. So the cases you're relying on are all cases in which the sale was made by the party being sued, correct? No, Your Honor. When we're talking about this question of duty, under Massachusetts law there doesn't need to be privity between the seller and a manufacturer for that manufacturer to owe a duty to the seller. That's Jacobs v. Yamaha Motor Corp. That's the tort version of the claim. Yes, yes, yes. I'm asking about the contract claim. No, but it's the same. No, but I'm asking for purposes of the terms now, money later point that you're trying to use to show there was no consideration. The cases you're relying on for that aren't those all cases in which the person being sued for breach or whatever is the party that they bought it from, so there was privity. I think that that is correct, Your Honor. Is there any case that you're aware of where that's not true? Not that I'm aware of, Your Honor, but this I will say. So what's the logic by which we would extend Massachusetts law to cover such a case? Was an argument made that Target was an agent? No, Your Honor, but I think that the question of who's extending Massachusetts law goes the other. I understand that, but I'm asking my question. And so is there, I guess I'm just, you acknowledge there's a set of cases. All those cases involve I buy it from the same party. Now you're saying apply it to a case in which I buy it from a different party. Correct. You say there's no case such as that. Correct, Your Honor. And then I ask why would I do that? Why would I do that? Well, so the question is why would you allow a company that owes a duty to a party to present terms to that party only after they've paid good money for a product? And so that's the relevant question here is whether it's fair for a company to provide these terms that it doesn't represent to a consumer before they purchase money, sorry, before they spend money that they would need to accept in order to use a product. And in that situation, a consumer needs a way to get their money back. Otherwise, companies like Everly Well can just put the thumb on the scale in favor of these post-purchase contract terms. But no court has held that a company is able to, that a company can impose terms on a consumer that is presented to the consumer only after they've purchased a product where the consumer lacks reasonable notice that they can reject those terms. But I hear your point, Your Honor. I understand that we are a bit out in front of the Massachusetts Supreme Judicial Court on this issue. And seemingly every court in the United States. And what I, no, what I mean is that the Massachusetts Supreme. What I mean is you don't have any case that applies in this circumstance. The Massachusetts Supreme Judicial Court has never clarified whether it adopts a money-now-terms-later theory of contracting. In a situation where you're buying it from a different party. In any situation, Your Honor. I know, but not only that, you're saying in addition when you're buying it from another party. Correct, Your Honor. And no court in the United States, so far as I'm aware, has said so. That's okay. I mean, it's not first time for everything, but. What I'm trying to say is that this is a novel fact pattern. It really just hasn't been that long. Do you want to just address the illusory consequence? Yes, Your Honor, yes. So, there are four in our, Everly Well is trying to tease apart what really is, may I answer this question? Sorry, Your Honor. Everly Well is trying to tease apart what really is one contract, Your Honor. And so, if you look at the user agreement at J, which starts at JA 73, expressly incorporates what Everly Well wants to call a separate contract that's terms of use. And so, everything that's under the heading terms of use is incorporated into this user agreement. Everything in the user agreement is incorporated in the terms of use. So, I think that the unilateral modification clause at JA 105 does give Everly Well the right to unilaterally modify all parts of its contract. And you can tell that because of the clause at JA 79 in the user agreement, which says, you agree that we may provide you with notices, including those regarding changes to this user agreement. That clause would simply make no sense whatsoever if Everly Well didn't think it had the right to unilaterally modify its provision. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.